UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-23172-CIV-GRAHAM/GOODMAN

ODILON COSTA, a foreign national,

    Plaintiff,

v.

DATAPRO, INC., a Florida
Corporation,

    Defendant.
_____/

**ORDER ON MOTION FOR ATTORNEY'S FEES**

This matter is before the Court on Defendant Datapro, Inc.'s Motion for Attorney's Fees (DE 139). Datapro requests $324,804.25 in attorney's fees. United States District Judge Donald L. Graham referred all motions for attorney's fees to the Undersigned (DE 26) and the parties consented to final disposition of attorney's fees motions by a magistrate judge on November 12, 2010 (DE 17).

Datapro attempted to confer with Plaintiff Odilon Costa before filing its motion, and it mailed a copy of the motion via U.S. mail to Costa in Brazil on September 27, 2011. However, Costa ceased participating in this case months ago and did not respond to the motion. The Undersigned carefully reviewed the motion, the pertinent portions of the record, and the application law. The motion will be **granted in part and denied in part**, as set forth below.

I.      Procedural Background

Costa sued Datapro Inc. in September 2010, asserting common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and promissory estoppel. Costa's claims were based on an oral agreement between Costa and Datapro. Datapro moved to dismiss Costa's complaint for failure to meet the jurisdictional amount for a diversity action and failure to state a claim. The district court denied the motion to dismiss but granted Datapro's motion to strike Costa's claim for attorney's fees because Costa failed to allege a statutory or contractual basis for the claim.

Datapro then counterclaimed against Costa for breach of contract, breach of fiduciary duty, violation of Florida's Uniform Trade Secrets Act (FUTSA) and trademark infringement under the Lanham Act. Datapro twice amended its counterclaim to include additional Lanham Act violations and claims for tortious interference with a business relationship. Counts II, III, and IV of Datapro's second amended counterclaim respectively alleged causes of action for trademark, service mark, and trade dress infringement against Costa under the Lanham Act.

At the crux of Datpro's counterclaims was its "e-IBS" software, which Costa secretly sold to a Brazilian bank, Banco Nossa Caixa, without Datapro's permission. Judge Graham recently found that:

> Costa, secretly and behind Datapro's back, used Datapro's service mark, trade dress, registered "e-IBS" trademark, and trade secret to engage in self-dealing. Costa intended to, and did, (a) confuse and mislead Datapro's clients into associating the Costa Entity with Datapro, and (b) led Datapro's clients and customers into believing that Costa and his entity had the authority to license the "e-IBS" Software. (DE 144, ¶ 9).

This case was never tried on the merits, however. Because of Costa's systematic obstruction of the discovery process, I recommended that Judge Graham strike Costa's answer and affirmative defenses, bar Costa from submitting any new defenses and enter judgment for Datapro on the issue of liability. (DE 123, at 19-20). Judge Graham adopted this recommendation and in addition dismissed Costa's affirmative claims with prejudice because Costa failed to appear at the pretrial conference, did not respond to opposing counsel's attempts to prepare a joint pretrial stipulation and ultimately stopped participating in this case altogether.

Judge Graham then directed Datapro to file a motion for summary judgment on the issue of damages. On February 15, 2012, Judge Graham granted in part Datapro's motion for final judgment, which included a request for tremble damages. Judge Graham entered a final judgment, awarding Datapro $1,579,455.94 in damages against Costa, but declined to award treble damages.

As stated above, Costa ceased participating in this case and did not respond to the instant attorney's fees motion. The motion is now ripe for adjudication.[1]

II.     Entitlement to Attorney's Fees

Under the "American rule," parties are presumed to bear their own fees and costs unless a statute or contract supports an independent claim to attorney's fees and costs. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 448 (2007). If the court determines that a party is entitled to an award of attorney's fees, then it must determine the appropriate amount of the fee award. In calculating a reasonable attorney's fee

---

[1]     Datapro's present attorney's fees request runs only through August 2011 and in a recent filing Datapro indicated that it does not intend to seek any additional fees in connection with this action. (See DE 146).

award, the court must consider the number of hours reasonably expended on the litigation, together with the customary fee charged in this community for similar legal services. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir. 1994). These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar."

Datapro advances four bases for attorney's fees: (1) Federal Rule of Civil Procedure 37(b)(2)(C); (2) 15 U.S.C. § 1117(b); (3) 15 U.S.C. § 1117(a); and (4) Fla. Stat. § 688.005. Datapro argues that the entry of a default judgment against Costa causes all well-pleaded allegations in the complaint to be admitted as true and that those allegations clearly meet the threshold for entitlement to fees under the respective Lanham Act and FUTSA provisions. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F App'x 860, 863 (11th Cir. 2007) (entry of default causes all well-pleaded allegations in the complaint to be admitted as true); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (justifying attorney's fee award under Lanham Act where the defendant was in default and the complaint alleged that the defendant acted "knowingly, maliciously, and oppressively").

Datapro appears to have overlooked that the Undersigned's sanctions recommendation, which Judge Graham adopted in its entirety, fell short of entering a default judgment against Costa and limited judgment to the issue of liability. (DE 123, at 19-20 & n.3). In this vein, Judge Graham made independent factual findings in determining the appropriate level of damages (rather than simply crediting the allegations in Datapro's pleadings). (DE 144).

Nevertheless, Datapro is still entitled to an award of attorney's fees under the Lanham act, specifically 15 U.S.C. § 1117(a), and FUTSA, Fla. Stat. § 688.005. This determination is based on Judge Graham's factual findings in his order granting Datapro's motion for final judgment.

15 U.S.C. § 1117(a) permits a court to award attorney's fees "in exceptional cases," which the Eleventh Circuit has defined as those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d. 166, 168 (11th Cir. 1994); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1475-76 (11th Cir. 1991). Similarly, FUTSA provides that the court may award attorney's fees where "willful and malicious misappropriation exists." Fla. Stat. § 688.005. Attorney's fees awards under both statues are committed to the sound discretion of the court. *See Burger King Corp.*, 15 F.3d at 168 (Lanham Act); *Chetu, Inc. v. Salihu*, No. 09-60588-CIV, 2010 WL 2680088, at *1 (S.D. Fla. July 6, 2010) (FUTSA). In the civil context, statutes that require "willful" behavior are generally interpreted to permit a finding of liability when the complained of behavior is "knowing or reckless." *See Steinberg v. Stitch & Craft, Inc.*, No. 09-60660-CIV., 2009 WL 2589142, at *2 (S.D. Fla. Aug. 18, 2009) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).

Judge Graham's factual findings clearly evince that Costa knowingly and intentionally misappropriated Datapro's trade secrets and purposefully used Datapro's service mark, trade dress, and trademark to mislead Nossa into believing that Costa and the entity that he created were legitimate holders of the "e-IBS" software. The

5

Undersigned further finds that the circumstances of this case justify a discretionary award of attorney's fees under both 15 U.S.C. § 1117(a) and Fla. Stat. § 688.005.

III.     Reasonable Hourly Rates

The Court must now determine the reasonable hourly rates for Datapro's counsel. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Supreme Court has held that a reasonable hourly rate is to be measured by prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886 (1984). In determining the prevailing market rate, the court should consider several factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

Acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. *Norman*, 836 F.2d at 1299. The court is itself an expert on the issue of hourly rates and may make a fee award based on its own experience and judgment concerning reasonable and proper fees. *Id.* at 1303.

The law firm of Salomon, Kanner, Damian & Rodriguez P.A. initially represented Datapro in this case. Pursuant to a fee agreement, Datapro charged the law firm $275.00 per hour for work performed by Vincent E. Damian, $250.00 per hour for work

performed by Juan E. Rodriguez and $150.00 per hour for work performed by Ken Taninaka. In February 2011, Datapro replaced the Salomon firm with Daniels Kashton Downs Robertson & McGirney, P.A. Datapro agreed to pay the Daniels Kashton firm $400.00 per hour for partner work, $250.00 per hour for associate work and $85.00 per hour for law clerks and paralegals. Daniels Kashton partner Scott D. Kravetz billed 328.5 hours on this case, partner Alvin D. Lodish billed 1.6 hours, associate Michael J. Schuman billed 507 hours, Alexis Cooper billed 26.6 hours as an associate and 21 hours as a law clerk, and four other paralegals and law clerks billed approximately 140 hours.

The Court has reviewed the affidavits submitted by Vincent E. Damian and Scott D. Kravetz summarizing the qualifications and experience of the attorneys, law clerks and paralegals who worked on this case. The Court is also personally familiar with the principal time keepers on this case, Mr. Kravetz and Mr. Schuman, because they appeared before the Undersigned at several hearings and actively litigated the discovery sanctions issue. Based on this information, the Court finds that the hourly rates claimed by Datapro are **reasonable**.

IV.     Reasonable Hours Expended

District courts must exercise independent judgment when reviewing a claim for hours reasonably expended. *See Norman*, 836 F.2d at 1301-02. A fee application must provide contemporaneous and accurate records of time spent on a case. *See Hensley*, 461 U.S. at 437; *National Ass'n. of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The records must identify the subject matter of the attorney's time expenditures. *Hensley*, 461 U.S. at 437. A fee applicant must exercise sound "billing judgment" and eliminate time entries that are excessive or unnecessary.

*Id.* at 434; *cf. also Simon v. Leaderscape LLC*, 565 F. Supp. 2d 1332, 1336 (S.D. Fla. 2008) ("a plaintiff must always attempt to litigate a matter in the most efficient means possible").

Local Rule 7.3(a) requires that the respondent to a motion for attorney's fees and costs "describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority." *See also ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("Those opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'") (quoting *Norman*, 836 F.2d at 1292).

As mentioned above, Costa did not respond to this motion and therefore does not challenge the number of hours claimed by Datapro. Nevertheless, I have independently reviewed the reasonableness of the time records that Datapro submitted. I note that this was not a routine case, both because the underlying factual background of the claims and counterclaims were unique and because the case took a distinct and unfortunate turn during the discovery process as a result of Costa's misconduct. This is not the type of case, therefore, where Datapro could rely on ready-made legal forms and memoranda. Rather, Datapro's case required ongoing legal research and motion practice. I also note that the discovery process was at times document-intensive and expensive, that numerous depositions were taken, that both sides filed motions for summary judgment and that overall the discovery and motion practice in this case was extensive and required a

considerable time commitment. Given these considerations, I find that the number of hours claimed by Datapro is **reasonable**.

V.      Adjustment of Loadstar for Non-Compensable Time

Although I find that the lodestar of $324,804.25 is reasonable based on the hourly rates and number of hours expended in this case, I must nevertheless account for the fact that not all of Datapro's attorney's fees are connected with its Lanham Act or FUTSA claims. District courts must differentiate, where possible, between attorney time connected with claims that give rise to attorney's fees and attorney time spent on non-compensable claims. *See Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) ("In an award of 'reasonable attorney fees' pursuant to the Lanham Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims unless 'the Lanham Act claims and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on [the separate] claims.'") (quoting John W. Crittenden & Eugene M. Pak, *Monetary Relief Under Lanham Act Section 35, in Litigating Copyright, Trademark & Unfair Competition Cases for the Experienced Practitioner* 1998, at 419 (PLI Pat., Copyrights, Trademarks and Literary Property Course Handbook Series No. 537, 1998)).

Datapro argues that Costa's infringements and misappropriations under the Lanham Act and FUTSA are the same conduct that constitutes Costa's breach of contract, breach of fiduciary duty and tortious interference. Datapro also contends that the same *conduct* underlies both Datapro's counterclaims and Costa's affirmative claims. The key factor in apportioning attorney's fees, however, is not whether the same conduct underlies both the compensable and non-compensable claims but whether it is possible to

9

distinguish between *the work* that the attorney spent on the different claims. *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002); *Gracie*, 217 F.3d at 1070.

Sometimes, the underlying conduct will be the same for the compensable and that non-compensable claims, which will translate into a finding that it is impossible to apportion the work performed on the different claims. For example, in this situation, I find that Datapro's common law counterclaims were so inextricably intertwined with its Lanham Act and FUTSA claims that it is not possible to make a meaningful adjustment for the work done on each claim.

On the other hand, the fact that the same conduct underlies *Costa's* affirmative claims does not mean that the Court cannot meaningfully apportion the time Datapro spent on those claims from the time it spent prosecuting its counterclaims. Having reviewed the fees ledgers that Datapro submitted, I find that the time spent defending against Costa's common law claims *can* be meaningfully apportioned. For example, Datapro separately moved to dismiss Costa's complaint and sought partial summary judgment on Costa's claims. Thus, while it may be impossible to distinguish between Datapro's claims and defenses for the work performed in connection with the overall factual investigation of the case, certain time entries are clearly traceable to Datapro's *defending* against Costa's common law claims.

Further, I have already determined that Datapro is entitled to fees under Rule 37 for fees incurred as a result of Costa's discovery misconduct. Thus, to the extent that there is any overlap with Datapro's defense of Costa's claims and the attorney time incurred as a result of Costa's discovery failures, Datapro will be awarded its fees for this

time. Additionally, to the extent that there is any overlap in the work Datapro spent defending against Costa's claims and prosecuting its own claims, attorney's fees will be awarded for this time as well.

Accordingly, I find that the loadstar should be **reduced by $58,000.00** to reflect the attorney time spent defending against Costa's claims, resulting an adjusted figure of **$266,804.25.**

VI.     Final Judgment for Attorney's Fees

Therefore, in consideration of the foregoing, Datapro Inc.'s motion for attorney's fees is **granted in part** and Defendant Datapro is awarded a final judgment of **$266,804.25** in attorney's fees against Plaintiff Odilon Costa, **for which sum let execution issue**. The Court will <u>not</u> enter a separate judgment for the attorney's fees awarded here. *See* Fed. R. Civ. P. 58(a)(3).

**DONE AND ORDERED** in Chambers, at Miami, Florida, on February 22nd, 2012.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Donald L. Graham
Counsel of Record

Odilon Costa
Rua Mato Grosso, 223-2
Andar-Vila Boa Vista
06411-170-Barueri-SP
**PRO SE**